OPINION
{¶ 1} Defendant-appellant Antwon O. Dawkins appeals from his conviction and sentence, following a guilty plea, on one count of Murder, with a firearm specification, five counts of Felonious Assault, all with firearm specifications, one count of Inducing Panic, with a firearm specification, one count of Carrying a Concealed Weapon, and one count of Having a Weapon Under a Disability. Dawkins's assigned appellate counsel was unable to identify any potential assignments of error having arguable merit, and filed a brief pursuant to Anders v. California
(1967), 386 U.S. 738. This court has afforded Dawkins the opportunity to file a pro se brief on his own behalf; he has not done so.
 {¶ 2} On September 5, 2004, Dawkins, along with unidentified co-complicitors, fired a handgun into a crowd in a parking lot at Marable's Party House. He killed one individual, and wounded five others. Dawkins was arrested and charged by indictment with the offenses to which he later pled guilty. Experienced counsel was assigned to represent Dawkins. After numerous discovery pleadings, Dawkins moved to suppress eyewitness identification evidence, contending that this evidence was obtained as the result of an unduly suggestive photographic identification procedure, and also to suppress statements he made to police, contending that they were obtained in violation of Miranda v.Arizona (1966), 384 U.S. 436. Dawkins's motion to suppress was overruled in its entirety, following a hearing.
 {¶ 3} As a result of a plea bargain, Dawkins agreed to plead guilty to all counts and specifications, in exchange for an agreed sentence of from 25 years to life. Dawkins appeared with his attorney before the trial court, and an appropriate colloquy was conducted, pursuant to Crim. R. 11(C), culminating in the acceptance of Dawkins's guilty plea.
 {¶ 4} About three weeks later, before the imposition of sentence, Dawkins sought to obtain new counsel and to withdraw his plea. The trial court assigned new counsel, also very experienced, for Dawkins, and new counsel filed a motion to withdraw the plea. The trial court held a hearing on Dawkins's motion to withdraw his plea, at which Dawkins, his initial trial attorney, and the investigator who assisted his initial trial attorney, all testified. At the conclusion of this hearing, the trial court put its findings and conclusions on the record, and denied the motion. Thereafter, Dawkins was sentenced in accordance with the plea agreement — imprisonment for a term of from 25 years to life.
 {¶ 5} Pursuant to Anders v. California, supra, we have a duty to review the record independently, which we have done. We find no potential assignments of error arising from the proceedings prior to the taking of Dawkins's plea. Our review of the transcript of the plea hearing discloses no potential assignments of error arising from that hearing. The trial court performed its duties under Crim. R. 11(C) patiently and thoroughly, and there is nothing in the record to suggest that Dawkins did not understand the nature of the charges, the potential penalties, or the rights that he was surrendering by pleading guilty. There is also nothing in the record to suggest that Dawkins tendered his plea other than knowingly and voluntarily.
 {¶ 6} The trial court conducted a thorough hearing on Dawkins's motion to withdraw his plea. The trial court's stated reasoning for its denial of the motion is worth quoting at length:
 {¶ 7} "Now, the first thing that must be discussed is what standards should be applied here. Obviously there are two standards. One standard that is to be applied is the standard that is applied when the Motion to Withdraw the plea is done prior to the sentence being imposed.
 {¶ 8} "In the Second District Court of Appeals in the case of State of Ohio versus Kevin King, 2004 Ohio 262, has spoken to the standard that should be applied in a pre-sentence situation. And what I'm going to do is to review this matter under both standards, under both a pre-sentence standard and also a post-sentence standard, because I believe whichever standard you use, you must come to the same conclusion, and that is that Mr. Dawkins' motion must be overrruled.
 {¶ 9} "So going first to the pre-sentence standard, again looking at State versus King, the Court said as follows: `Pre-sentence motions to withdraw a plea should be liberally granted. However, a defendant does not — does not have an absolute right to withdraw a plea prior to sentencing. A decision to allow the withdrawal of a plea before sentencing is within the sound discretion of the trial court. A trial court will not be found to have abused its discretion in denying a motion to withdraw a plea where:
 {¶ 10} "`(1) The accused is represented by highly-competent counsel; [2] the accused received a full hearing pursuant to Criminal Rule 11, and (3), the accused is given a complete and impartial hearing on the Motion to Withdraw after it is filed; and finally [4] the record reveals that the Court gave full and fair consideration to the plea withdrawal request.'
 {¶ 11} "Well, going to the first part of that standard, I do find that Mr. Dawkins was represented prior to Mr. Cox being appointed by a highly-appointed [sic] attorney, not to say that Mr. Cox is not a highly-competent attorney, but Mr. Thompson is indeed a highly-competent attorney. He's been before this Court on a number of occasions, and he always, based upon everything I've been able to observe, has handled his clients well. He has been fully versed in the law. He has always been a strong advocate for his clients, and that same conclusion applies to this case, to Mr. Dawkins' case. I know that Mr. Thompson worked very diligently for Mr. Dawkins; and I conclude that in this particular case, Mr. Thompson is a highly-competent criminal defense attorney.
 {¶ 12} "Number two, I also find that Mr. Dawkins received a full hearing under Criminal Rule 11. In this particular case, knowing the significance of the case and knowing Mr. Dawkins' young age [18 at the time of the plea hearing], I believe it's fair to say that I took more time than usual in going over the plea. I certainly understood that this was a significant decision for Mr. Dawkins to make, and it was something that was difficult for him to do.
 {¶ 13} "Based upon that, and I think the record will reflect this, I took a considerable amount of time with him, made sure that [Criminal] Rule 11 was fully and completely complied with, and I'm confident that all of the requirements of Rule 11 were fulfilled on April 21 when Mr. Dawkins did enter his plea.
 {¶ 14} "Going to number three, `The accused is given a complete and impartial hearing on the motion to withdraw after it is filed.' As I indicated, Mr. Dawkins was represented by highly-competent counsel. At the time of the plea, I made sure that once he decided that he wanted to withdraw his plea and to terminate the services of Mr. Thompson, that he be supplied with equally competent counsel; and I did that by making sure that Mr. Cox was appointed.
 {¶ 15} "Mr. Cox, I think it's fair to say, and I'm not saying anything that's not known in the hallways of this courtroom, is an individual that this Court and the other judges of this court can call upon at any time to take difficult cases and to handle difficult matters in a very professional, competent manner. Mr. Cox has certainly done that in this case; and Mr. Dawkins, I think it's fair to say, was given a complete and full opportunity to address this Court and to explain to this Court why he is of the opinion that he should be allowed to withdraw his motion.
 {¶ 16} "And then going to the fourth prong of the test announced by the Second District in State of Ohio versus King, `The record should reveal that the Court gave full and fair consideration to the plea withdrawal request.' In order to do that, in order to make sure that that prong of the test has been fulfilled, I think it's incumbent upon me on the record at this time to go over the various allegations that Mr. Dawkins has made regarding Mr. Thompson's representation, and also other reasons he has given as to why he should be allowed to withdraw his plea. I made a list of those that I'm going to review at this point.
 {¶ 17} "The first thing that Mr. Dawkins testified to is that Mr. Thompson did not fully look into the case, I think is the words that he used. Well, I find that that is not a credible claim by Mr. Dawkins. He may believe it, but it's not accurate, it's not credible. The record reflects instead that Mr. Thompson did a full and complete investigation. He fully discussed the elements of this case with Mr. Dawkins. He fully laid out the various scenarios that were presented to Mr. Thompson — excuse me — to Mr. Dawkins. And I believe what Mr. Thompson did, in conjunction with working with his investigator, Mr. Sampson, leads to the inevitable conclusion that he did in fact fully look into the case and gave Mr. Dawkins advice based upon a full and complete knowledge of the facts of the case and also the circumstances that Mr. Dawkins found himself in.
 {¶ 18} "Mr. Dawkins also said that Mr. Thompson told him that he would not get 25 years and that he would beat the case. Well, again, I find that particular statement to be particularly non-persuasive. I don't find that statement to be credible at all. No one of Mr. Thompson's caliber, no one of his experience, knowing the situation that Mr. Thompson — excuse me — that Mr. Dawkins was facing, would tell the defendant, would tell his client that he was going to beat the case. That's just not something that a criminal defense attorney under those circumstances would do.
 {¶ 19} "Further, I'm sure there was discussion about 25 years, and I'm sure Mr. Thompson, as he candidly testified to, did tell Mr. Dawkins that if he went to trial and lost he could be looking at a period of incarceration that would significantly exceed 25 years. In doing that, he was simply doing his job. He was simply telling Mr. Dawkins the truth.
 {¶ 20} "This allegation regarding the Motion to Suppress I don't really find to have much merit whatsoever. Testifying at the Motion to Suppress would not have been something that any competent defense attorney would in all likelihood have suggested to Mr. Dawkins. The Motion to Suppress hearing went on for several days because of the need to get witnesses subpoenaed. Mr. Thompson made sure that those witnesses were subpoenaed. They all came in; they all were able to identify Mr. Dawkins based upon photographic identifications that occurred earlier with Detective Doyle.
 {¶ 21} "Also my recollection is that all of those witnesses, in addition to being able to identify Mr. Dawkins pursuant to the photographic identifications, already in some fashion knew Mr. Dawkins. They had gone to school with him or they'd seen him in the neighborhood. In some way, in some fashion they knew him. Under those circumstances, it would not have been in any fashion appropriate for Mr. Thompson to have called Mr. Dawkins as a witness at the Motion to Suppress hearing.
 {¶ 22} "Additionally, I also do not find credible Mr. Dawkins' statement that he requested strongly to Mr. Thompson to be allowed to testify at the Motion to Suppress hearing. I believe instead Mr. Thompson's version of events, that that really was something that was only discussed as a possibility and that Mr. Dawkins did not make any strong request or any request at all to testify at the Motion to Suppress hearing.
 {¶ 23} "Let's talk a little bit about the issue of medication. There was some indication that Mr. Dawkins is taking a drug known as Depakote, which is an anti-depressant. He's been taking that for some 13 or 14 years, since the age of five; and again, it is a medication that deals with symptoms of depression. However, as admitted by Mr. Dawkins during the motion, at the time of the plea and also today, even though he takes that medication, it does not in any way affect his ability to understand what is going on around him. It did not affect his ability to understand what was occurring at the plea on April 21, and it did not in any way affect his ability to understand the questions that were posed to him today and his ability to answer those questions.
 {¶ 24} "So the fact that he was on medication does not in any way affect my conclusion regarding the fact that Mr. Dawkins should not be allowed to withdraw of [sic] plea of guilty, which was tendered, again, on April 21 of this year.
 {¶ 25} "Mr. Dawkins also indicates that he was scared at the time of the plea on April 21. Well, I dare say that just about every defendant who stands before me and enters a plea of guilty is scared. If that's going to be the standard for allowing folks to withdraw their pleas, I think every plea would be subject to such withdrawal. One may be scared, one may be anxious, but that does not make the plea any less voluntary. Again, I go back to what happened at the Rule 11 hearing, Mr. Dawkins, and you were fully and completely aware of what was going on and you entered that plea in a completely and absolutely voluntary fashion."
 {¶ 26} The trial court then discussed Dawkins's present claim that he was innocent, juxtaposed that with his admission of guilt at his plea hearing, and continued as follows:
 {¶ 27} "Also, under the case of State versus King, again the case I initially cited from the Second District Court of Appeals which was decided in 2004 and once again it can be found at 2004 Ohio 262, the Court noted that `the trial court, in reviewing a motion to withdraw a plea in the face of a claim of actual innocence, can look into the credibility of that claim.'
 {¶ 28} "And even though I certainly did not have an opportunity to hear all the evidence because we did not go to trial, I was, as previously indicated, in a position to hear testimony at the Motion to Suppress hearing. And given that testimony which I was privy to at the Motion to Suppress hearing, I find your claim of actual innocence to be suspect, to say the least. And do not find it to be credible.
 {¶ 29} "And again, perhaps more importantly, your claim of actual innocence in the face of your plea of guilty to these charges is not credible, and also the fact that you make the bare bones allegation without providing any meat to those bones leads to the conclusion that the claim of actual innocence is not credible and should not be a basis for allowing you to withdraw your plea under Ohio Rules of Criminal Procedure 32.1
 {¶ 30} "Now, I'd like to change gears for just a moment and talk about the standard in a post-sentencing situation. And again, as I noted at the beginning of this hearing, there is at least — before I do that, before I switch gears I also want to talk about one other concept. And that is, it's very clear, and this is a theme that runs through all the cases that I've looked at when reviewing whether an individual, whether a defendant should be allowed to withdraw a plea in a pre-sentencing situation.
 {¶ 31} "A theme that runs through that is that a change of heart is not a sufficient reason to allow, even under the liberal standard of 32.1, a defendant to change his plea.
 {¶ 32} "The case that is significant in that regard is the case of State versus Landis * * * which was decided by the Montgomery County Court of Appeals on December 6th, 1995, and it's Court of Appeals Case No. 15099, and it can also be found on-line at 1995 Ohio App Lexis 5350. And Landis stands for the proposition that a `mere change of heart is an insufficient justification for permitting a defendant to withdraw what was a voluntarily-entered plea.' The fact that you now believe that the deal that you struck was not a good deal or not a good enough deal is not the kind of thing that, standing alone, would allow the Court to allow you to withdraw your plea. Again, that's a mere change of heart, which under the case law that I've reviewed is not sufficient."
 {¶ 33} The trial court then applied the stricter standard for considering post-sentencing motions to withdraw a plea, and not surprisingly found Dawkins's motion deficient under that standard, as well.
 {¶ 34} We find no arguable flaws in the trial court's reasoning quoted above. Furthermore, our review of the transcript of the hearing on the motion to withdraw the plea leads us to conclude that all of the trial court's factual findings are supported in the record.
 {¶ 35} Finally, the trial court imposed the sentence that had been agreed upon as part of the plea bargain — a sentence of imprisonment of from 25 years to life. A sentence authorized by law and imposed upon the joint recommendation of both the defendant and the prosecution is not subject to appellate review. R.C. 2953.08(D). The sentence imposed in this case is authorized by law, and was agreed upon by both the defendant and the State as part of the plea bargain. Therefore, it is not reviewable on appeal.
 {¶ 36} In conclusion, we agree with Dawkins's appellate counsel that there are no potential assignments of error having arguable merit, and that this appeal is wholly frivolous. Accordingly, the judgment of the trial court is Affirmed.
Brogan, P.J., and Grady, J., concur.